[Docket No. 15]

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY
### CAMDEN VICINAGE

PREMIER ORTHOPAEDIC ASSOCIATES
OF SOUTHERN NJ, LLC,

              Plaintiff,

      v.

ANTHEM BLUE CROSS BLUE SHIELD,
JOHN DOE 1-10, JANE DOES 1-10, AND
ABC CORPORATIONS 1-10,

          Defendants.

Civil No. 22-02407 (RMB/EAP)

**MEMORANDUM ORDER**

**RENÉE MARIE BUMB, Chief United States District Judge:**

This case is another attempt by an out-of-network healthcare provider to recover costs from a healthcare insurer for providing medical treatment to one of the insurer's insured. Plaintiff, Premier Orthopaedic Associates of Southern NJ, LLC ("Premier"), filed a lawsuit in New Jersey state court against Defendant, Anthem Blue Cross Blue Shield ("Anthem"), seeking payment for costs to perform medically necessary surgery on a patient that Anthem allegedly approved, but failed to pay for.

After removing this action to federal court, Anthem asks this Court to dismiss Premier's lawsuit, arguing, among other things, that the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*, preempts Premier's claims, and Premier's Complaint fails to state plausible claims to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). At this stage, the Court declines to find that ERISA preempts Premier's state-law claims. But the Court agrees with Anthem that Premier's Complaint lacks enough facts to state plausible claims, and therefore, **GRANTS** Anthem's

motion to dismiss.  The Court dismisses Premier's Complaint **WITHOUT PREJUDICE**.  If Premier can plead additional facts to cure the deficiencies in its claims, the Court will allow Premier to file an amended complaint within 30-days of this Memorandum Order without the need for a formal motion to amend.

## I.   BACKGROUND

A patient with many spinal injuries sought treatment from Premier's employee/contractor, Dr. Rahul Shah, M.D.  [Notice of Removal, Ex. A, ¶¶ 13-14 ("Complaint") (Docket No. 1.1).]   Premier is a "non-participating or out-of-network provider" to the patient's healthcare plan.  [*Id.* ¶ 12.]  Before performing "medically necessary services" to the patient, Premier obtained from the patient's healthcare insurer, Anthem, an "authorization for the medically necessary treatment of the [p]atient . . . pre-certification No. 0243250657."  [*Id.*  ¶¶ 15-16.]

Anthem claims the so-called preauthorization the Complaint mentions must be a letter Anthem sent to the patient and copied to Dr. Shah.  [Certification of Shade Oluwasanmi ¶ 3, Ex. B. (Docket Nos. 15-4 and 15-6)  (the "Preauthorization Letter").]  The Preauthorization Letter provides:

> This is not an approval for claim payment.  This approval is a confirmation of medical necessity only.  We have not yet reviewed your health care plan.  Depending on the limitations of the health care plan, we may pay all, part, or none of the claims.

[*Id.* (emphasis removed).]   Based on the preauthorization, Dr. Shah, along with a physician assistant, performed spinal surgery on the patient.  [Compl. ¶¶ 17-18.]  The surgery cost about $301,000, and Premier billed Anthem that amount, which according to Premier, "represents the normal and reasonable charges" for the surgery performed.  [*Id.* ¶¶ 19-21.]  Anthem paid nothing.  [*Id.* ¶ 22.]

Premier then sued Anthem in the Superior Court of New Jersey, asserting three common-law claims against the insurer to recoup the unpaid balance of the patient's surgery: (1) breach of contract; (2) promissory estoppel; and (3) account stated. [*See generally* Compl.] All of Premier's claims stem from the preauthorization approving the surgery. [*Id.* ¶¶ 26, 32, 36.] Anthem removed this matter to federal court based on diversity jurisdiction. [Notice of Removal ¶¶ 8-14 (Docket No. 1).] Anthem now moves to dismiss Premier's lawsuit, arguing that ERISA preempts Premier's state-law claims, Premier's Complaint fails to state claims upon which relief can be granted, and Premier lacks standing to assert an ERISA claim against Anthem. [Def. Mem. of Law 12-25 (Docket No. 15-1) ("Def. Br.").]

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss a complaint if the plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The party seeking dismissal of the complaint must show it fails to state a claim. *Lesher v. Zimmerman*, 822 F. App'x 116, 119 (3d Cir. 2020). When reviewing a motion to dismiss, courts must accept the complaint's factual allegations as true and afford the plaintiff "every favorable inference to be drawn therefrom." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (quoting *Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir. 1992)). Courts will dismiss a complaint if the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Nor will courts accept "legal conclusions" as true, and

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*; *see also Malleus*, 641 F.3d at 563.

Generally, courts may only consider "the allegations contained in the complaint, exhibits annexed to the complaint[,] and matters of public record."  *Levins v. Healthcare Revenue Recovery Grp. LLC*, 902 F.3d 274, 279 (3d Cir. 2018) (alteration in original) (quoting *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).  But when a complaint references extrinsic documents, courts can consider the documents so long as they are "undisputedly authentic" and "the complainant's claims are based upon [those] documents."  *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010); *see also In re Asbestos Products Liability Litigation (No. VI)*, 822 F.3d 125, 133 n.7 (3d Cir. 2016).

## III.   ANALYSIS

### a. ERISA and Preemption

Congress enacted ERISA to establish "uniform federal standards for not only pension plans, but also welfare plans."  *Plastic Surgery Ctr., P.A. v. Aetna Life Ins. Co.*, 967 F.3d 218, 225 (3d Cir. 2020).  ERISA applies to "any employee benefit plan if it is established or maintained . . . by any employer engaged in commerce or in any industry affecting commerce."  29 U.S.C. § 1003(a).  ERISA contains "expansive pre-emption provisions" aimed "to ensure that employee benefit plan regulation would be 'exclusively a federal concern.'"  *Aetna Health, Inc. v. Davila*, 542 U.S. 200, 208 (2004) (quoting *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 523 (1981)).

Section 514(a) of ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan."  29 U.S.C. § 1144(a).  "The scope of state laws that may relate to a plan is expansive, encompassing all laws, decisions, rules, regulations, or

4

other State action having the effect of law, of any State." *Plastic Surgery*, 967 F.3d at 226 (cleaned up) (quoting 29 U.S.C. § 1144(c)(1)). This includes both state statutes and common-law claims. *Id.*; *see also Nat'l Sec. Sys., Inc. v. Iola*, 700 F.3d 65, 83 (3d Cir. 2012) ("State common law claims fall within this definition and, therefore, are subject to ERISA preemption.").

For Section 514(a) preemption to apply, a state law "relates to" an employee benefit plan if the law has: (1) a "reference to" the plan; or (2) a "connection with" the plan. *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 97 (1983). The Third Circuit in *Plastic Surgery* outlined the contours of Section 514(a) preemption for state-laws that "relate to" an ERISA-governed healthcare plan:

> The first applies "[w]here a State's law acts immediately and exclusively upon ERISA plans . . . or where the existence of ERISA plans is essential to the law's operation." [*Gobeille v. Liberty Mut. Ins. Co.*, 577 U.S. 312, 320 (2016)] (alterations in original) (citation omitted). The second covers state laws that "govern[ ] . . . a central matter of plan administration or interfere[ ] with nationally uniform plan administration," and those state laws that have "acute, albeit indirect, economic effects [that] force an ERISA plan to adopt a certain scheme of substantive coverage or effectively restrict its choice of insurers." *Id.* (second alteration in original) (internal quotations marks and citations omitted). The latter inquiry is guided by "the objectives of the ERISA statute," which provide a blueprint for "the scope of the state law that Congress understood would survive." *Id.* (citation omitted).

967 F.3d at 226.

Here, Anthem contends Section 514(a) of ERISA preempts Premier's state-law claims since the claims make an "impressible reference" to an ERISA-governed healthcare plan.[1]

---

[1] In its pre-motion order, this Court ordered the parties to address the Court's decision in *Atlantic ER Physicians Team, Pediatrics Assoc., PA v. Unitedhealth Grp., Inc.*, 2021 WL 4473117 (D.N.J. Sept. 30, 2021) in their briefing. [See Docket No. 11.] *Atlantic ER* involved a motion to remand to state court and complete preemption under Section 502 of ERISA, which is about federal subject matter jurisdiction. Since Anthem removed this matter

[Def. Br. at 12-14 (Docket No. 15-1).]  Thus, this Court must determine whether Premier's state-law claims "are predicated on the plan or plan administration," "the plan is a critical factor in establishing liability," or the "claims involve construction of the plan."  *Plastic Surgery*, 967 F.3d at 230 (cleaned up, internal quotation marks and citations omitted).

Anthem's entire preemption argument turns on the Preauthorization Letter.  [Def. Br. at 13-14.]  But that letter is not annexed to the Complaint.  Nor does the Complaint reference any letter.  Rather, the Complaint only alleges that Anthem "approved (pre-certification No. 0243250657) the services to be performed by" Premier.  [Compl. ¶ 16.]  In its opposition, Premier disputes the Preauthorization Letter's validity, arguing the Complaint never mentions the letter and questions whether Premier ever received it.  [Pl. Opp. Mem. of Law 10 (Docket No. 16) ("Pl. Br.").]  Premier also argues that its state-law claims are not based on the Preauthorization Letter, but a "prior course of conduct" between Premier and Anthem. [*Id.* at 11.]  While courts may look to documents beyond the complaint on a motion to dismiss, courts may only do so if the documents are "undisputedly authentic."  *Mayer*, 605 F.3d at 230.  Because Premier disputes the Preauthorization Letter's authenticity, this Court declines to consider it.  *E. Coast Spine Joint & Sports Med. v. Anthem Blue Cross Blue Shield*, 2023 WL 3559704, at *4 (D.N.J. Apr. 27, 2023) (refusing to consider so-called authorization letter where plaintiff "dispute[d] the authenticity of the letter and assert[ed] that none of the allegations in its Complaint are based on it"); *E. Coast Spine Joint & Sports Med. v. Aetna Life Ins. Co.*, 2022 WL 17582561, at *2 n.7 (D.N.J. Dec. 12, 2022) (same).

---

based on diversity jurisdiction, see Notice of Removal ¶¶ 8-14, and the parties agree that Section 502 of ERISA is inapplicable, see Def. Br. at 10-12 and Pl. Br. at 9, this Court will not address Section 502.

Turning to the merits of Anthem's preemption challenge, courts in this District have reached varying decisions on whether Section 514(a) of ERISA preempts an out-of-network provider's state-law claims against an ERISA healthcare plan insurer.  *Compare E. Coast Spine Joint & Sports Med.,* 2023 WL 3559704, at \*3-4 (refusing to find Section 514(a) preemption) *and Gotham City of Orthopedics, LLC v. United Healthcare Ins. Co.*, 2022 WL 111061, at \*4-5 (D.N.J. Jan. 12, 2022) (finding ERISA did not preempt out-of-network provider's state-law claims created through a preapproval of medical services) *with Gotham City Orthopedics v. Aetna, Inc.*, 2021 WL 1541069, at \*2-3 (D.N.J. Apr. 19, 2021)  (finding Section 514(a) of ERISA preempted out-of-network provider's claims) *and Aetna Orthopedics & Sports Med. Inst., P.C. v. Oxford Health Ins., Inc.*, 2022 WL 1718052, at \*7-8  (D.N.J. May 27, 2022) (ruling Section 514(a) of ERISA preempted out-of-network provider's claims based on preauthorization of medical procedure).

Relying on *Aetna Orthopedics*, *Princeton Neurological Surgery, P.C. v. Aetna, Inc.*, 2023 WL 2307425 (D.N.J. Feb. 28, 2023) and the Preauthorization Letter, Anthem urges this Court to find Section 514(a) of ERISA preempts Premier's state-law claims.  [Def. Br. at 12-16.] At this motion to dismiss stage, the Court declines to find preemption.  Unlike here, the *Aetna Orthopedics* and *Princeton Neurological Surgery* courts had the preauthorization letters from the insurers to the healthcare providers (the *Princeton Neurological Surgery* court even had transcripts from phone calls between the insurer's and provider's representatives discussing the patient's healthcare plan).  *Aetna Orthopedics,* 2022 WL 1718052, at \*1, \*6; *Princeton Neurological Surgery, 2023* WL 2307425, at \*5-6.  As noted, this Court cannot consider the Preauthorization Letter because Premier disputes the letter's authenticity.  [Pl. Br. at 10.]

7

Unlike the documents before the *Aetna Orthopedics* and *Princeton Neurological Surgery* courts, nothing in the Complaint directs this Court to consider the patient's healthcare benefit plan.

As pled, Premier claims Anthem's preapproval of the patient's surgery created an independent obligation apart from any ERISA-governed healthcare plan. Said another way, the patient's healthcare plan is "not the source of the rights that [Premier] seeks to enforce here." *Gotham City of Orthopedics*, 2022 WL 111061, at *4. Premier seeks to enforce an obligation that arose from the act of Anthem's preapproval of the patient's surgery, and so, the patient's healthcare plan is "not a critical factor in establishing liability," rendering Section 514(a) of ERISA inapplicable. *Plastic Surgery*, 967 F.3d at 230 (quoting *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 139-40 (1990)); *see also Kindred Hosp. E., LLC, v. Local 464A United Food & Com. Workers Union Welfare Serv. Benefit Fund*, 2021 WL 4452495, at *8 (D.N.J. Sept. 29, 2021) (collecting cases and observing that "[t]he Third Circuit, as well as other courts, has consistently held that where the predicate of a claim is not an ERISA plan but an independent state-law created duty, Section 514(a) does not preempt the state-law claim").

Moreover, while Premier claims that the $301,000 damages it seeks from Anthem is the "normal and reasonable" charges for the patient's surgery, *see* Compl. ¶ 21, this Court will not have to engage in the "exacting, tedious, or duplicative inquiry" of the patient's healthcare plan that Section 514(a) forbids. *Plastic Surgery*, 967 F.3d at 234. If anything, the "normal and reasonable" rate could be determined by a "cursory" review of the patient's plan for any reference to the industry-standard rate or fee schedule for Anthem's in-network provider agreements that Section 514(a) does not prohibit. *Id.* at 233; *see also E. Coast Spine Joint & Sports Med.*, 2023 WL 3559704, at *4.

Thus, viewing the Complaint in the light most favorably to Premier as this Court must, *see Malleus*, 641 F.3d at 563, the Court is unable to find Section 514(a) of ERISA applicable at this juncture.[2]

### b. The Complaint Fails to State Plausible Claims

That said, even when viewed in the light most favorably to Premier, the Complaint lacks enough facts to support Premier's breach of contract, promissory estoppel, and account stated claims.[3]

### i. Premier has failed to plead a breach of a contract claim

Premier claims that by authorizing the patient's surgery, Anthem created an implied contract with Premier to pay for that surgery. [Compl. ¶¶ 26-27]. "The elements necessary to form an implied-in-fact contract are identical to those required for an express agreement." *Matter of Penn Cent. Transp. Co.*, 831 F.2d 1221, 1228 (3d Cir. 1987). To sustain a breach of contract claim, Premier must allege facts showing that: (1) it entered a contract with Anthem "containing certain terms," (2) Premier performed its contractual obligations; (3) Anthem breached the contract – that is, failed to perform its contractual obligations; and (4) Premier suffered damages because of Anthem's breach. *Goldfarb v. Solimine*, 245 A.3d 570, 577 (N.J. 2021) (quoting *Globe Motor Co. v. Igdalev*, 139 A.3d 57, 64 (N.J. 2016)). A valid contract requires mutual assent, consideration, and "performance by both parties." *Id.* (quoting *Shelton v. Restaurant.com, Inc.*, 70 A.3d 544, 556 (N.J. 2013)). Unlike express contracts that are usually formed by words (either written or spoken), implied contracts arise from the parties' conduct,

---

[2] This Court declines to address Anthem's argument that Premier lacks standing to bring an ERISA claim against Anthem because Premier did not receive an assignment from the patient. [Def. Br. at 22-23.] Because Premier is not suing for the denial of ERISA benefits or based on an assignment from the patient, "Anthem's argument is not relevant here." *E. Coast Spine Joint & Sports Med.,* 2023 WL 3559704, at *6.

[3] Since the parties did not dispute that New Jersey law applies, the Court will apply New Jersey state law.

which focuses on whether the defendant's conduct, "as viewed by a reasonable person in the relevant custom or trade, revealed a promise to pay." *Duffy v. Charles Schwab & Co., Inc.*, 123 F. Supp. 2d 802, 817 (D.N.J. 2000).

As noted above, Premier's implied contract claim flows from the alleged authorization that Premier received from Anthem to perform the "medically necessary" surgery on the patient. [Compl. ¶¶ 15-16, 26-27.]   But merely alleging that Anthem authorized the surgery – medically necessary or not – cannot, without more, establish an implied contract between the parties. *E. Coast Spine Joint & Sports Med.*, 2023 WL 3559704, at *5-6 (dismissing breach of contract claim for failure to state a claim where contract claim depended entirely on preauthorization for medically necessary surgeries); *E. Coast Spine Joint & Sports Med.*, 2022 WL 17582561, at *3 (dismissing breach of contract claim premised on preauthorization for medical services because merely claiming surgeries were "'pre-approved' and medically necessary is insufficient to state a claim that [insurer] breached a contract of 'certain terms'"); *Haghighi v. Horizon Blue Cross Blue Shield of N.J.*, 2020 WL 5105234, at *5 (D.N.J. Aug. 31, 2020) (dismissing breach of contract claim premised on preauthorization because "Plaintiff cannot depend on a simple preauthorization, in and of itself, to establish that the parties executed a standalone contract, intended to cover all rendered services").

Besides pointing to the supposed authorization, Premier has alleged no other facts to establish a contract's existence.   Other than alleging that Anthem authorized the surgery and gave an authorization number, the Complaint contains no information on the authorization's terms, whether the authorization was written or oral, the type of medical services the authorization covered (whole or part of the patient's treatment), the costs to be covered (all or some), and so on.   The Complaint lacks factual allegations showing the parties made an

agreement containing "certain terms," and so, Premier has failed to state a breach of contract claim. *Bergen Plastic Surgery v. Aetna Life Ins. Co.*, 2022 WL 4115701, at *2 (D.N.J. Sept. 9, 2022) (dismissing nearly identically pled contract claim).

To salvage its deficient contract claim, Premier argues it created a contract with Anthem through a "course of conduct." [Pl. Br. at 14.] The only course of conduct the Complaint alleges is the mere authorization for the patient's surgery – nothing more. [Compl. ¶¶ 15-16.] The Complaint never alleges that Premier had any prior agreements or dealings with Anthem that might cause Premier to believe that Anthem would pay for the patient's surgery based on the preauthorization. Some courts have found that a complaint alleging such details are enough to plead an implied contract claim. *See, e.g.*, *MedWell, LLC v. Cigna Corp.*, 2021 WL 2010582, at *3 (D.N.J. May 19, 2021) (collecting cases finding allegations sufficient to plead an implied contract where allegations showed that "an out-of-network provider and an insurer regularly dealt with each other, and the provider would obtain preauthorization"). But this is not the case. Indeed, that Premier is "a non-participating . . . out-of-network provider" suggests it had no prior relationship with Anthem. [Compl. ¶ 12.] Accordingly, Premier's breach of contract claim is dismissed. *Premier Ortho. Assoc. of S. N.J., LLC v. Atena, LLC*, 2021 WL 2651253, at *4 (D.N.J. June 28, 2021) (dismissing virtually identically pled breach of contract claim filed by same plaintiff); *see also E. Coast Spine Joint & Sports Med.,* 2022 WL 17582561, at *3 (dismissing breach of contract claim based only on preauthorization).

ii.  **Premier has failed to plead a promissory estoppel claim**

To plead a promissory estoppel claim, Premier must allege facts showing: (1) Anthem made "a clear and definite promise;" (2) Anthem made that promise "with the expectation

11

that [Premier] will rely on it;" (3) Premier "reasonably" relied on the promise; and (4) Premier relied on that promise to its "definite and substantial detriment." *Goldfarb*, 245 A.3d at 577 (quoting *Toll Bros, Inc. v. Bd. of Chosen Freeholders of Burlington*, 944 A.2d 1, 19 (N.J. 2008)).

Like its contract claim, Premier's entire promissory estoppel claim turns on the alleged preauthorization that Anthem gave. [Compl. ¶ 32.] Again, merely relying on Anthem's supposed preauthorization is not enough to state a viable claim. Without providing any detail on the alleged preauthorization – such as services covered or payment, the Complaint fails to show that Anthem made "a clear and definite promise" to Premier about the patient's surgery, and so, the promissory estoppel claim fails. *E. Coast Spine Joint & Sports Med.,* 2022 WL 17582561, at *3 (dismissing promissory estoppel claim based on preauthorization because plaintiff pled "no facts that shed light on what it was [insurer] was authorizing and provides no detail regarding the circumstances under which [insurer's] alleged authorization was communicated"). To sustain a promissory estoppel claim, Premier had to show the "precise promise [Anthem] made" which it failed to do, and therefore, the claim is dismissed. *Premier,* 2021 WL 2651253, at *4 (dismissing virtually identically pled promissory estoppel claim filed by same plaintiff).

### iii. **Premier has failed to plead an account stated claim**

To plead an account stated claim, Premier must allege facts showing Anthem promised to pay Premier "based on an admission of indebtedness to [it]." *Maersk Line v. TJM Int'l Ltd. Liab. Co.*, 427 F. Supp. 3d 528, 536 (D.N.J. 2019). The required "admission can be express or implied through conduct." *Id.* Thus, Premier must show: "(1) previous transactions between the parties establishing the relationship of debtor and creditor; (2) an agreement between the parties, express or implied, on the amount due from the debtor to the

creditor; and (3) a promise by the debtor, express or implied, to pay the amount due." *Bergen Plastic Surgery,* 2022 WL 4115701, at *3 (quoting 29 *Williston on Contracts* § 73:56 (4th ed.)).

Again, Premier exclusively relies on Anthem's alleged preauthorization to support its account stated claim.   [Compl. ¶ 36.]   Like its contract and promissory estoppel claims, the Complaint contains no details on the alleged authorization, especially on what Anthem supposedly agreed to pay for.   Without providing any information on Anthem's supposed promise to pay, Premier's account stated claim fails.   *Premier,* 2021 WL 2651253, at *4 (dismissing virtually identically pled account stated claim filed by same plaintiff because complaint failed to allege the "precise promise [insurer] made").   Nor has Premier alleged "previous transactions" between itself and Anthem establishing a debtor-creditor relationship. *Bergen Plastic Surgery,* 2022 WL 4115701, at *3 (dismissing account stated claim where complaint did not "allege any facts suggesting that the parties had a debtor–creditor relationship").   Again, that Premier is "a non-participating . . . out-of-network provider" suggests it had no prior relationship with Anthem.   [Compl. ¶ 12.]   Thus, this Court dismisses Premier's account stated claim.   *Premier,* 2021 WL 2651253, at *4.

## IV.   CONCLUSION

For the above reasons, and for good cause shown,

IT IS on this **30th** day of **May 2023**, hereby:

**ORDERED** that Defendant Anthem Blue Cross Blue Shield's Motion to Dismiss [Docket No. 15] is **GRANTED**; and it is further

**ORDERED** that Plaintiff Premier Orthopaedic Associates of Southern NJ, LLC's Complaint is dismissed **WITHOUT PREJUDICE**; and it is further

**ORDERED** that Plaintiff Premier Orthopaedic Associates of Southern NJ, LLC is given leave to file an amended complaint to cure the deficiencies outlined above within 30-days from the date of this Memorandum Order.

<u>**s/Renée Marie Bumb**</u>
RENÉE MARIE BUMB
Chief United States District Judge